**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EQUUS MINING LTD.,

                          Plaintiff,

              v.                                                    **COMPLAINT**

BLOX INC.,

                          Defendant.

Plaintiff Equus Mining Ltd. ("Equus" or "Plaintiff"), by and through its undersigned

attorneys, Sher Tremonte LLP, files this Complaint against defendant Blox Inc. ("Blox" or

"Defendant") and alleges as follows:

## NATURE OF ACTION

1.       Plaintiff Equus brings this action to stop Defendant Blox from pursuing

unauthorized litigation in Equus's name.

2.       In 2014, Equus sold its ownership rights in a gold mining concession in the nation

of Guinea to Blox.

3.       Due to legal restrictions on license transfers in Guinea, the mining license

remained in Equus's name following the sale as per the contract.

4.       In September 2020, Equus was shocked to learn that Blox had initiated two

separate legal proceedings in Equus's name in the courts of Guinea without Equus's knowledge

or consent.  The purpose of these litigations was to challenge the Guinean government's

revocation of Equus's mining license and its issuance of related rights to a competing third party.

5.       Equus had not authorized any litigation to be commenced in its name, and Blox

did not have any contractual authority, or any other legal authority, to act in Equus's name.

6.       Over the past year, Equus has repeatedly demanded that Blox cease and desist

from continuing to litigate in Equus's name.  Blox has failed to comply with these demands and continues to prosecute these actions in Guinea in Equus's name.

7.      Accordingly, Equus now seeks a declaratory judgment that Blox does not have any legal authority to prosecute litigation in Equus's name.  Absent such relief, Equus will continue to be exposed to any adverse consequences resulting from litigation being conducted in its name in a foreign forum that it did not choose and over which it has no control.  These adverse consequences potentially include: 1) reputational damage flowing from the conduct and results of the litigations; and 2) attorney's fees that Equus has had to incur to address Blox's wrongdoing.

## PARTIES

8.      Plaintiff Equus Mining Ltd. (formerly Caspian Oil & Gas Ltd.) is a mining company incorporated under the laws of Australia.  Its principal place of business is 66 Hunter Street, Sydney, NSW, Australia.  Equus is publicly traded on the Australian Stock Exchange.

9.      Defendant Blox Inc. is a publicly traded development and exploration corporation organized under the laws of the State of Nevada.  Its principal place of business is 1177 Avenue of the Americas, 5th Fl., New York, NY  10036.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) & (c) because Plaintiff Equus is a citizen of Australia, Defendant Blox is a citizen of Nevada and New York, and the amount in controversy exceeds $75,000.

11.      The Court has general personal jurisdiction over Blox because Blox is headquartered in New York, New York.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Blox resides

in this judicial district.

## FACTUAL BACKGROUND

### *The Sale and Purchase Agreement*

13.     The relationship between Equus and Blox arises from a series of transactions involving a property in Guinea known as Mansounia.

14.     Equus holds a mining exploration license for Mansounia (the "Mining License").

15.     As of April 2014, Equus also owned a 78% beneficial interest in Mansounia.

16.     In 2006, Equus had granted exclusive exploration rights in Mansounia to Burey Gold Guinee ("BGL"), which had the opportunity to earn a 70% beneficial interest in Mansounia if it completed a feasibility study relating to gold mining opportunities.

17.     In or around April 2014, Equus and BGL entered into a sale and purchase agreement (the "Sale Agreement") with Joseph Boampong Memorial Institute Ltd. ("JBMIL"). Under the terms of this agreement, JBMIL purchased all of Equus's ownership rights in Mansounia and all of BGL's exploration rights in Mansounia.

18.     Before the completion of the transaction, on July 24, 2014, JBMIL assigned its rights and obligations as purchaser under the Sale Agreement to Blox pursuant to an assignment agreement (the "Assignment Agreement"). Accordingly, Blox became the owner of Equus's former ownership rights in the Mansounia property.

19.     The initial purchase consideration paid by Blox to Equus and BGL under the Sale Agreement was $1,150,000 in the form of Blox stock and $140,000 in cash.

20.     If and when commercial gold production commences in Mansounia, Blox will owe Equus and BGL additional consideration under the Sale Agreement in the amount of

$1,150,000 in Blox stock (28.57% of which goes to Equus).  No commercial gold mining has occurred yet in Mansounia.

21.     At the time of the Sale Agreement, the Mining License was set to expire in August 14, 2014 unless renewed by Blox.

22.     As noted in the recitals of the Sale Agreement, the parties understood that under Guinea law, the Mining License could not be transferred to alternate owners.  For this reason, the Sale Agreement anticipated that the Mining License would remain in Equus's name after the sale until August 14, 2014, at which point it would be renewed in the purchaser's name.  Blox assumed responsibility under the Sale Agreement to take steps to maintain and renew the Mining License, which Equus agreed to cooperate in, including by executing any necessary documentation in Equus's name.

23.     Nothing in the Sale Purchase Agreement authorizes Blox to conduct litigation in Equus's name.  Indeed, the Sales Purchase Agreement does not authorize the purchaser to act in Equus's name for any purpose.  To the contrary, it expressly provides that Equus would sign documentation relating to the initial renewal of the Mining License, which would be prepared by Blox, and that Blox would indemnify Equus in connection with all such efforts.  This is set forth in  Sections 10.1, 10.3, and 10.4 of the Sale Agreement, which state:

> 10.1. Following Completion, throughout the remaining term of the Mansounia licence, **as EML [Equus] is the registered holder of the licence it shall**, acting under the direction of JBMIL [assigned to Blox], **make all applications and do all things necessary as may be required by the relevant law to maintain or renew the Mansounia Concession at JBMIL's cost**.  For absolute clarity, JBMIL acknowledges that responsibility and obligation for all such actions lies with it and EML's role [Equus] will be a token and nominal role.  **JBMIL shall hold EML harmless in all respects.**
>
> . . .

4

10.3.  ***EML covenants that it will do all things, sign all documents and use its best endeavours to promptly obtain and maintain the registration of JBMIL's or its assigns interest*** (if not already so registered) by the relevant authority in respect of the Mansounia Concession.  Under the responsibility and instruction of JBMIL and, pursuant to such documentation as is prepared by JBMIL, ***EML will before the expiry date of the Mansounia licence apply for a mining licence, and have the named holder of that licence transferred to JBMIL***.

10.4.  For the avoidance of any doubt, JBMIL acknowledges that following Completion, it shall be solely responsible for maintaining the Mansounia Concession in good standing.  It shall be solely responsible for preparing such documents as may be required from time to time in this regard and EML's role will be a token and nominal role as the registered holder of the licence.  JBMIL shall hold EML completely harmless in all respects.

Sale Agreement § 10 (emphasis added.)

### ***Equus Learns That Litigation Is Being Conducted in its Name***

24.     As Equus has now learned, following the Sales Purchase Agreement, Blox continued to renew the Mining License in Equus's name without the consent or knowledge of Equus on multiple occasions from 2014-2019.  Blox had no authority to do this under the Sale Agreement, which provided that Blox would prepare the initial renewal paperwork and that Equus would execute it.  The Sale Agreement anticipated that future renewals after August 2014 would be in the name of the purchaser.

25.     Blox's unilateral efforts to renew the Mining License in Equus's name were apparently successful through 2019.

26.     However, on January 29, 2020, the Guinean government, through its Ministry of Mines and Geology (the "MMG"), issued an order withdrawing the Mining License, on the ground that it had expired in December 2019.  Then on April 6, 2020, the Guinean government purportedly issued a license in Mansounia to a competing third party, Penta Goldfields (the "Penta Goldfields Permit").  Upon information and belief, Blox has taken the position that these governmental actions were procured by fraud, bribery, forgery, and corruption.

27.     Beginning in January 2020, Blox initiated two litigations in Guinea in Equus's name, without Equus's knowledge or consent.  Blox had no authority to initiate these litigations, either under the Sale Agreement or any other contract or law.

28.     The first litigation is an administrative proceeding before the Guinean Supreme Court in which Blox, under Equus's name, requests the cancelation of the MMG's order revoking the Mining License held in Equus's name (the "Administrative Proceeding").

29.     The second litigation is a civil proceeding before a Guinean Civil Court in which Blox, again under Equus's name, seeks the suspension of the Penta Goldfields Permit (the "Penta Lawsuit," and together with the Administrative Proceeding, the "Guinean Litigations").  Upon information and belief, as a result of the Penta Lawsuit, the Penta Goldfields Permit has been suspended pending resolution of the Administrative Proceeding.

30.     Equus had no idea that the Guinean Litigations in its name existed until September 10, 2020.  At that time, Equus received an email from Blox's CEO and Director, Robert Renne, informing it of the existence of the Guinean Litigations.

31.     Equus was disturbed to learn that litigations were being conducted in its name over which it had no knowledge or control.

32.     Accordingly, after learning of the lawsuit, Equus, through its Australian counsel, repeatedly demanded that 1) Blox cease and desist from continuing to litigate in Equus's name; and 2) provide complete documentation and case files regarding the Guinean Litigations.

33.     Equus and Blox discussed the Guinean Litigations on a number of occasions between September 2020 and May 2021.  Blox falsely indicated several times that it would comply with Equus's demands to cease further litigation and to provide full case records.  In these communications, the parties discussed alternative avenues through which litigation to

reinstate the Mining License could be properly prosecuted, without Blox improperly purporting to act in Equus's name.  However, these plans never came to fruition, and Blox has failed to correct its wrongdoing.

34.     In the midst of discussions on how to fix the problem that Blox had created, Blox cut off communications with Equus in or around May 2021.  Equus was completely in the dark for months thereafter about what was occurring in the Guinean Litigations.

35.     On May 11, 2021, Equus, through its Guinean counsel, formally notified the Guinean Supreme Court that it had not authorized the Administrative Proceeding to be conducted in its name and requested that the case be declared void for lack of standing.

36.     Finally, on October 13, 2021, after months of radio silence, Equus learned through its Guinean counsel that Blox had filed a memorandum opposing Equus's application to void the Administrative Proceeding back in June 2021.  In that memorandum, Blox falsely represented that it had authority to prosecute the Administrative Proceeding and that Equus had not expressed opposition to it doing so in Equus's name.

37.     Accordingly, despite its previous assurances to the contrary, Blox has refused to withdraw the Guinean Litigations, which it continues to prosecute in Equus's name.  Blox also never provided the promised records and case files of the Guinean Litigations. As a result, to this day, Equus has only partial and limited knowledge of what has transpired in the Guinean Litigations.

## FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT AND INJUNCTION UNDER 28 U.S.C. §§ 2201, 2202

38.     Plaintiff repeats and incorporates each of the foregoing allegations as if fully set forth herein.

39.     As described above, Blox has initiated the Guinean Litigations in Equus's name.

40.    Blox does not have authority under the Sale Agreement or Assignment Agreement to conduct litigation, or to take any other actions, in Equus's name.

41.    The only relationship between Blox and Equus is the arms-length transaction between them reflected in the Sale Agreement and Assignment Agreement.

42.    Blox is not an owner, manager, partner, director, or officer of Equus.  Blox does not have or claim to have any position of control or authority over Equus.

43.    There is no contract, law, regulation, or statute in any jurisdiction that authorizes Blox to take any actions, including prosecuting litigation, in Equus's name.

44.    Despite Equus's demands that it cease and desist, Blox continues to prosecute the Guinean Litigations in Equus's name.

45.    Equus faces continuing and irreparable damage, both financial and reputational, through its lack of control over litigation that is being conducted in its name.  This damage includes: 1) reputational damage flowing from the conduct and results of the litigations; and 2) attorney's fees that Equus has had to incur to address Blox's wrongdoing.

46.    Equus has no adequate remedy at law.

47.    Equus accordingly seeks a declaratory judgment that 1) Blox has no right to prosecute any litigation, including the Guinean Litigations, in Equus's name; 2) Blox must cease and desist from prosecuting the Guinean Litigations; 3) Blox must withdraw and terminate the Guinean Litigations; and (4) Blox must cease and desist from taking any further actions of any kind in Equus's name.

48.    Equus further seeks a permanent injunction, as permitted under 28 U.S.C. § 2202, 1) requiring Blox and its agents to withdraw the Guinean Litigations; 2) prohibiting and its agents Blox from continuing to prosecute the Guinean Litigations in Equus's name; and 3)

prohibiting Blox and its agents from taking any further actions of any kind in Equus's name.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Equus Mining Ltd prays for relief against Defendant Blox as follows:

1.      A declaratory judgment that 1) Blox has no right to prosecute any litigation, including the Guinean Litigations, in Equus's name; 2) Blox must cease and desist from prosecuting the Guinean Litigations; 3) Blox must withdraw and terminate the Guinean Litigations; and 4) Blox must cease and desist from taking any further actions of any kind in Equus's name.

2.      A permanent injunction 1) requiring Blox and its agents to withdraw the Guinean Litigations; 2) prohibiting Blox and its agents from continuing to prosecute the Guinean Litigations in Equus's name; and 3) prohibiting Blox and its agents from taking any further actions of any kind in Equus's name.

3.      Applicable statutory interest;

4.      Plaintiffs' full costs, including attorney's fees; and

5.      Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         December 28, 2021

SHER TREMONTE LLP

By:   */s/ Mark Cuccaro*
        Justin M. Sher
        Mark Cuccaro
90 Broad Street, 23rd Floor
New York, NY 10004
Tel: 212.202.2600
jsher@shertremonte.com
mcuccaro@shertremonte.com

*Attorneys for Plaintiff Equus Mining Ltd.*

9